IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
OCTOBER 11, 2007 Session

## IN THE MATTER OF M. L. P.

**Direct Appeal from the Juvenile Court for Shelby County**
**No. P9221      Herbert Lane, Special Judge**

_____

**No. W2007-01278-COA-R3-PT - Filed April 8, 2008**

_____

**DISSENT**

_____

HOLLY M. KIRBY, J., dissenting:

I must respectfully dissent from the majority opinion in this case, on the grounds that the proof does not support a finding of willful abandonment by the Father.[1]  Specifically, there is no evidence that the Father was aware of his duty to visit, a necessary element of willfulness.

In the proceedings below, after the trial court listened to all of the witnesses, it adjourned in order to permit the attorneys to submit caselaw and any additional arguments on the termination petition.  When the trial judge resumed the proceedings, the attorney for Father moved to dismiss the petition to terminate on the grounds that Father had never been advised of the requirements of Tennessee's abandonment statute.  He contended that, had the Department of Children's Services ("DCS") been involved with the child at issue, DCS would have advised Father regarding the abandonment statute, and the Petitioners' failure to do so amounted to a violation of his constitutional rights to equal protection and due process.

Without commenting on Father's argument, the trial court dismissed the petition to terminate on another ground.  The trial judge first observed:

> I am concerned that the father was not an original party to the Dependency and Neglect case . . . .  He's not been found to be a neglectful parent.  This termination is proceeding without any finding that he's unfit in any way, or that the child will suffer substantial harm if the child is placed back in his custody.

_____

[1]I agree with the majority's holding that Mr. and Mrs. Herring, "Great Aunt and Uncle," did not have standing to file a petition to terminate Father's parental rights.

The trial court noted that there had been little evidence on Father's ability to pay child support, and made no finding related to child support.

The trial court then issued its oral findings on whether Father "abandoned" the child by willfully failing to visit:

> It's clear to me that up until the time that the child went into the custody of the aunt and uncle here, that [Father] was in fact attempting visitation with the – Mrs. Duvall, the grandmother. The testimony was that when he attempted to contact these parties for visitation they said, no, we don't think it's in the child's best interest. Then everybody was serving him with a court action, which here we are today. It would seem to me that these parties have in fact frustrated any attempt that this young man would have had toward visitation with the child. So, I cannot therefore say that he has abandoned the child within the meaning of the law.
>
> * * *
>
> . . . [A]s to this Termination Petition, I don't feel good about it. I don't think that you have shown the grounds sufficient for me to say that he has abandoned all attempts to be a parent or abrogated all his responsibilities to this child. I just feel that he has been frustrated in any attempt to visit with the child and because of that I do not feel that his actions were willful. Therefore this termination Petition will be dismissed.

Thus, the trial court found that Father's efforts at visitation were frustrated by the child's guardians, i.e., that he had a "justifiable excuse" for not visiting. *In re Audrey S.*, 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005). Because the trial court found no willful abandonment on this basis, it was not necessary for the trial court to address any other element of willfulness or to address Father's argument that lack of notice of his duties and the consequences of failing to perform his duties under Tennessee's parental termination statute violated his constitutional rights to equal protection and due process.

On appeal, after reviewing the evidence, the majority emphasizes that "the element of willfulness is essential, and central to the determination of abandonment." It notes the meaning of "willfulness" as set forth in prior caselaw: "Failure to visit or support a child is 'willful' when a person is *aware* of his or her *duty* to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *In re Audrey S.*, 182 S.W.3d at 864 (emphasis added) (citing *In re M.J.B.*, 140 S.W.3d at 654). It acknowledges that "demeanor and credibility . . . play an important role in determining intent" and that "trial courts are the proper courts to make a determination of willfulness."[2]

---

[2]The majority states: "As a question of law, the trial court's ruling that the facts of this case *do not* sufficiently support the termination ground of willful abandonment is reviewed *de novo* with no presumption of correctness." (emphasis added.) The majority cites *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007). This attribution to *A.M.H.* is not entirely accurate; the Supreme Court's statement in *A.M.H.* is actually the converse. It states: "As a question of law, the trial court's ruling that the facts of this case *sufficiently support* the termination

(continued...)

The majority then finds that there is no evidence in the record indicating that Father's efforts at visitation were frustrated after Great Aunt rebuffed his attempts to contact the child in February 2004, in essence concluding that Father did not have a "justifiable excuse" for not visiting. Having reached this conclusion, the majority skips over the remaining elements, ultimately making an affirmative factual finding that Father willfully abandoned M.L.P.

I cannot agree with this conclusion. In order to find willful abandonment, the Court must find that the parent was "aware of his or her duty to visit" and nonetheless failed to do so. *In re Audrey S.*, 182 S.W.3d at 864. This requires a finding that the parent had knowledge that failing to visit his child for four consecutive months could result in termination of parental rights. *In re W.B., IV*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618 at *11-12 (Tenn. Ct. App., Apr. 29, 2005).

In *In re: W.B. IV*, as in this case, DCS was not involved, and the termination petition against the respondent mother was filed by private parties who sought to adopt the mother's child. The mother had a long-term addiction to crack cocaine, and the father was in and out of jail. After the mother had reportedly subjected the child to unsafe conditions, she agreed to give temporary custody of the child to an associate of a private ministry, in order to allow the mother to obtain treatment for her addiction. *Id.* at *1-3. The mother did not complete the drug treatment program and ended up incarcerated for a short time. The child's guardian filed a dependency and neglect petition and was awarded custody of the child. *Id.*

Later, the ministry associate became acquainted with a couple who wished to adopt the child and, toward that end, custody of the child was given to the prospective adoptive couple. *Id.* at *3. The mother was not told of this transfer of custody. Once the mother learned of it, her efforts at making contact with the child were limited to angry telephone calls to the ministry associate; she took no legal measures to locate the children or establish visitation. *Id.* at *1-4. By the time the prospective adoptive couple filed a petition to terminate the mother's parental rights, the mother had

---

[2](...continued)

ground of willful abandonment are reviewed de novo with no presumption of correctness." *A.M.H.*, 215 S.W.3d at 801.

The distinction between the standard of review as stated by the Tennessee Supreme Court in *A.M.H.* and the standard of review as stated by the majority is subtle but significant. Where the trial court has evaluated the credibility and demeanor of the witnesses and concluded that there is clear and convincing evidence of grounds for termination, we need only look, *de novo*, at the aggregate of the evidence and determine if it meets the clear and convincing standard, giving appropriate deference to the trial court's assessment of credibility and demeanor. This is what the Tennessee Supreme Court did in *A.M.H.*

In contrast, in this case, the trial court found that grounds for termination were *not* established by clear and convincing evidence. For this Court to reverse that finding and hold that grounds have been established, as the majority does here, necessitates that this Court make an affirmative factual finding of willfulness that goes *against* the direction of the trial court's assessment of the witnesses' credibility and demeanor. Moreover, such an affirmative finding must comport with the "clear and convincing evidence" standard. This is considerably more than the *de novo* review of the record that was done by the Supreme Court in *A.M.H.*

not seen the children for almost ten months. The trial court found that the mother had willfully abandoned her children by failing to visit or support them and terminated her parental rights on that ground. *Id.* at \*6. The mother appealed.

The appellate court in *W.B. IV* found that the evidence did not amount to "clear and convincing" evidence that the mother's failure to visit or pay support was willful, and thus reversed the trial court's termination of her parental rights. *Id.* at \*12. Its holding was discussed by the dissent to the opinion of the intermediate appellate court in *In re Adoption of A.M.H.*, No. W2004-01225-COA-R3-PT, 2005 WL 3132353 (Tenn. Ct. App. 2005):

> The appellate court in *In re W.B., IV* recognized that the children had not been taken into State custody by DCS, rendering inapplicable the statutes requiring DCS to explain to the biological parent the definition of abandonment and the criteria for termination of parental rights. *Id.* at \*11 (citing T.C.A. § 37-2-403(a)(2) (Supp. 2004)). Nevertheless, the court emphasized, "Mother's knowledge of a duty or expectation that she provide support and visit is a factor in determining willfulness." *Id.* The court stated, "Nothing in the record indicates Mother was informed by anyone that her failure to visit or support the children for four consecutive months could result in termination of her parental rights." *Id.* at \*12. On these facts, the appellate court concluded that the evidence did not rise to the level of "clear and convincing" that the mother's failure to visit her children during the four months immediately preceding the filing of the petition was willful.
>
> \* \* \*
>
> Although *In re W.B., IV* was decided after the trial court below rendered its decision, its reasoning is applicable here. In any case in which the court is asked to terminate parental rights, the definition of willfulness remains the same, regardless of the involvement of DCS. Indeed, the legislature's designation of DCS as having a duty to inform the biological parent that failure to support or visit could result in the termination of parental rights indicates the legislature's intent that willfulness involve the abrogation of a *known* duty. This supports the conclusion in *In re W.B., IV* that, even if DCS did not take the child into custody, in order to prove willfulness, the petitioner must show that the biological parent had some understanding of the consequences of his action or failure to act.

*Id.* at \*102-03 (footnotes omitted). *See also In re K.C. Jr.*, 2005 WL 2453877, at\*10-11 (no abandonment by failure to support where the parent was not informed that failing to pay support put her parental rights at risk).

As in *W.B, IV*, nothing in the record in the case at bar indicates that Father was informed by anyone at any time that his failure to visit M.L.P. for four consecutive months could result in the termination of his parental rights. Father's lack of knowledge of the potential consequences of failing to visit is important in determining whether his failure to visit during the four-month period preceding the petition was willful.

-4-

Despite its acknowledgement that willfulness can only be found where the parent "is aware of his or her duty to visit," the majority does not address this element and indeed does not discuss or even cite ***In re W.B. IV***. In ***W.B., IV***, the parent's lack of knowledge of the consequences of her failure to visit was determinative in the Court's holding that the record did not support a finding of willful abandonment. Given the lack of evidence of such notice in the record below, the same should hold true in this case.

Therefore, I disagree with the majority's conclusion that clear and convincing evidence in the record establishes that Father's failure to visit M.L.P. amounted to willful abandonment under Tennessee's statutes governing termination of parental rights. I would hold that the Petitioners did not carry their burden of proving, by clear and convincing evidence, that Father willfully abandoned M.L.P. by failing to visit him.[3] Therefore, I would affirm the trial court's holding that grounds for the termination of parental rights had not been established, and its dismissal of the Petition.[4]

Accordingly, I respectfully dissent.

_____
HOLLY M. KIRBY, JUDGE

---

[3]This holding would pretermit the constitutional issue raised by Father in the trial court below and on this appeal.

[4]As noted in the dissent to the opinion of the intermediate appellate court in ***In re Adoption of A.M.H.***, our Supreme Court or our Legislature should address the issue in this dissent, in order to ensure confidence in the fair and consistent application of the law.